IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES EDWIN KING,    : <br>     Petitioner    : <br>     : <br> v.    : <br>     : <br> JESSICA SAGE, Warden Lewisburg    : <br> Prison Camp,    : <br>     Respondent    : | No. 1:24-cv-01628 <br><br> (Judge Kane) |

**MEMORANDUM**

Presently before the Court is pro se Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241. For the reasons set forth below, the Court will dismiss the petition due to Petitioner's failure to exhaust his administrative remedies.

**I.     BACKGROUND**

Pro se Petitioner James Edwin King ("King"), who is currently incarcerated at Federal Correctional Institution Lewisburg, pleaded guilty to scheming to deprive the United States of money, property, and honest services through the use of interstate wires (18 U.S.C. §§ 1343, 1346), bribery (18 U.S.C. § 201(b)(2)), and falsification of records (18 U.S.C. § 1519) in the United States District Court for the District of Columbia on October 26, 2018. See (Doc. No. 1 at 1); United States v. King, No. 18-cr-00318 (D.D.C. Oct. 26, 2018), ECF No. 56. On February 15, 2019, King was sentenced to an aggregate sentence of one-hundred-and-thirty-two (132) months' incarceration. See King, No. 18-cr-00318 (D.D.C. Feb. 15, 2019), ECF Nos. 19, 31.[1] According to the Federal Bureau of Prisons' Inmate Locator (https://www.bop.gov/inmateloc/), King has a projected release date of October 15, 2027.

---

[1] Although the sentencing hearing occurred on February 15, 2023, King's judgment of sentence was not entered until February 25, 2019. See King, No. 18-cr-00318 (D.D.C. Feb. 25, 2019), Doc. No. 19.

King commenced the instant action by filing the instant petition for a writ of habeas corpus under 28 U.S.C. § 2241, which the Clerk of Court docketed on September 25, 2024. (Doc. No. 1.) In this petition, King asserts that the BOP is not properly applying time credits he has earned under the First Step Act ("FSA"), which he believes should have resulted in his release from incarceration into a halfway house by August 2023. (Doc. Nos. 1 at 1–2; 1-1 at 1.)[2]

On October 21, 2024, the Court issued an Order directing Respondent to file a response to the petition within twenty (20) days. (Doc. No. 4.) Respondent timely filed a response in opposition to the petition on November 7, 2024. (Doc. No. 6.) Although King could have filed a reply to the response within fourteen (14) days of its filing, see (Doc. No. 4 at 1), he never filed a reply brief. Instead, approximately a month after any reply brief would have been due, King filed a "Motion to Strike Respondent Warden's Response to Petition for Writ of Habeas Corpus as Non-Responsive or in the Alternative Grant Petitioner Habeas Corpus Discharge from Institutional Incarceration in State of Pennsylvania to Prerelease Custody of Home Confinement in Home State of Maryland." See (Doc. No. 8). King's Section 2241 petition is ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Section 2241 Generally

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence." See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal

---

[2] King does not specifically identify any habeas claim in the portion of the form Section 2241 petition where he should have identified his claims. See (Doc. No. 1 at 6–7). Nevertheless, the Court has reviewed the remainder of the petition in attempting to ascertain his claim in this case.

prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out." See Woodall, 432 F.3d at 242, 243 (citation omitted). As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody. See, e.g., Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal inmate's Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the manner in which the BOP is computing their federal sentence); United States v. Vidal, 647 F. App'x 59, 60 (3d Cir. 2016) (unpublished) ("Because [the federal inmate's] claim challenges the BOP's calculation of sentence credits, it is appropriately addressed in a petition for a writ of habeas corpus pursuant to [Section] 2241" (citation omitted)).

    **B.**    **The FSA**

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System (the "System") within two-hundred-and-ten (210) days of December 21, 2018, the date on which the FSA was enacted. See 18 U.S.C. § 3632(a). The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release. Id. Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each

inmate based on the inmate's specific criminogenic needs." See Kurti v. White, No. 1:19-cv-02109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive FTCs to be applied toward time in pre-release custody or supervised release. See 18 U.S.C. § 3632(d)(4)(A). An inmate may initially earn ten (10) days of credit for every thirty (30) days of successful participation. See id. Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn an additional five (5) days of credit for every thirty (30) days of successful participation. See id.

Inmates convicted of certain enumerated offenses, or inmates subject to a final order of removal, are ineligible to earn FTCs. See id. § 3632(d)(4)(D)–(E). In addition, an inmate cannot earn FTCs for EBRRs successfully completed prior to the enactment of the FSA on December 21, 2018, or "during official detention prior to the date the prisoner's sentence commences under [18 U.S.C. §] 3585(a)." See id. § 3632(d)(4)(B). Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." See id. § 3585(a).

The BOP has issued regulations providing that "[a]n eligible inmate begins earning FSA time credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." See 28 C.F.R. § 523.42(a). An inmate must also be "successfully participating" in designated programming to earn FSA credits. See 28 C.F.R. § 523.41(c)(1). "'Successful participation' requires a determination by [BOP] staff that an eligible inmate has participated in the EBRR

4

programs or PAs that the [BOP] has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." See id. § 523.41(c)(2).

### III.   Analysis

#### A.   King's motion to strike

The Court first addresses King's motion to strike. (Doc. No. 8.)  In this motion, King contends that the Court should strike Respondent's response to his habeas petition because Respondent did "not address nor even seek to deny" that he "has accrued the necessary amount of FSA [t]ime [c]redit days [b]enefits [sic] to mandate his immediate discharge from respondent Warden's institutional incarceration within" Pennsylvania so he can be returned to his home state of Maryland.  See (id. at 1–2).  King's argument is meritless.  Even if Respondent failed to address King's claims in his petition (which she did not), such a failure would not warrant the striking of the response.  See, e.g., Fed. R. Civ. P. 12(f) (allowing district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter").  Therefore, the Court will deny King's motion to strike.

#### B.   King's Section 2241 petition

In the response to the Section 2241 petition, Respondent argues that the Court should not address the merits of the petition because King failed to exhaust his administrative remedies with the BOP before filing it.  (Doc. No. 6 at 1, 5–7.)  Alternatively, Respondent asserts that the Court should deny the petition because King lacks a liberty interest in prerelease custody placement, and the BOP has recommended him for the maximum Residential Re-Entry Center placement permitted by the Second Chance Act.  (Id. at 1–2, 8–12.)  The Court agrees with Respondent that

5

King has failed to exhaust his administrative remedies and, as such, will dismiss his Section 2241 petition.[3]

Although Section 2241 does not contain an explicit statutory exhaustion requirement, the Third Circuit Court of Appeals has consistently required a federal inmate to exhaust their administrative remedies before filing a Section 2241 petition.  See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) ("Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." (citations omitted)).  Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." See id. at 761–62 (citations omitted)).  Exhaustion is not required when it would not promote these goals. See Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) ("The exhaustion doctrine will not be applied . . . when none of the basic goals (of the doctrine) would be served." (citation and internal quotation marks omitted)).  "For example, exhaustion may be excused where it 'would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm.'"  Brown v. Warden Canaan USP, 763 F. App'x 296, 297 (3d Cir. 2019) (unpublished) (quoting Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)).

The BOP has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of [their] confinement."  See 28 C.F.R. §

---

[3]  Given this conclusion, the Court has not addressed Respondent's other arguments in her response.

542.10(a). First, an inmate should attempt informal resolution of the issue with the appropriate staff member. See id. § 542.13(b). If informal resolution is unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the warden within twenty (20) calendar days "following the date on which the basis for the Request occurred." See id. § 542.14(a). The warden is to respond to the request within twenty (20) calendar days. See id. § 542.18. An inmate dissatisfied with the warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the warden signed the response." See id. § 542.15(a). Finally, an inmate may appeal from the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response." See id. The General Counsel's response to this appeal is due within twenty (20) calendar days; however, the time for a response may be extended by twenty (20) days. See id. § 542.18.

      Here, King alleges that he submitted an administrative remedy, which was rejected on August 27, 2024, without "lawful authority for refusal." See (Doc. No. 1 at 2). He attaches a copy of this purported administrative remedy, which is an Inmate Request to Staff form. See (Doc. No. 1-1 at 1). The Inmate Request to Staff form does not qualify as a formal grievance using the BP-9 form; rather, it is an attempt at an informal resolution of an issue under the BOP's administrative remedy program. See 28 C.F.R. § 542.13 ("Except as provided in § 542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."). To the extent that King was dissatisfied with the response to his Inmate Request to Staff, he needed to file a formal Request for Administrative Remedy using the BP-9 form. See id. § 542.14(a). King never filed such an administrative request concerning his RRC placement or

7

FSA time credits. In this regard, Respondent attaches a computerized record of King's administrative remedy submissions, which shows that the BOP received only two (2) administrative remedy submissions, and neither of them related to his RRC placement or FSA time credits. See (Doc. Nos. 6-2 ¶ 5; 6-4 at 2–3). These records show King did not exhaust his administrative remedies with the BOP on the claims raised in his petition.

The Court's conclusion about King's failure to exhaust is buttressed by his motion to strike. When he filed this motion, he was obviously aware that Respondent had argued that he failed to exhaust his administrative remedies. Nonetheless, at no point in this motion does King mention this argument; instead, he focuses on Respondent's purported failure to address the merits of his claim in both the motion itself and the attached supporting memorandum of law. See (Doc. No. 8 at 1–5). Overall, the record shows that King failed to exhaust his administrative remedies with the BOP regarding his claims about RRC placement and his FSA time credits. Accordingly, the Court will dismiss King's Section 2241 petition due to his failure to exhaust administrative remedies.[4]

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss King's Section 2241 petition without prejudice for his failure to exhaust administrative remedies. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[4] Although King has waived any argument that this failure should be excused by failing to timely file a reply brief or assert it in his petition, there is no evidence supporting an argument that exhaustion would have been futile, that the BOP clearly and unambiguously violated any statutory or constitutional rights, or that the BOP's administrative procedure is inadequate to prevent irreparable harm. See Brown, 763 F. App'x at 297.